1  ALAN S. PETLAK (SBN 179362)
   petlaka@ballardspahr.com
2  ETHAN CHERNIN (SBN 273906)
   chernine@ballardspahr.com
3  **BALLARD SPAHR LLP**
   2029 Century Park East, Suite 800
4  Los Angeles, California 90067-2909
   Telephone: (424) 204-4400
5  Facsimile:  (424) 204-4350

6  Attorneys for Susquehanna International Group,
   LLP (incorrectly named as Susquehanna
7  International Group, LLC)

FILED
CLERK, U.S. DISTRICT COURT

SEP 1 2 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10  DOUGLAS L. FREY,                CASE NO. **CV12-7819** CAS

11              Plaintiff,          **NOTICE OF REMOVAL OF** (MANx)
                                    **ACTION UNDER 28 U.S.C. §**
12       v.                         **1441(b) (DIVERSITY)**

13  SUSQUEHANNA INTERNATIONAL
    GROUP, LLC, a Delaware limited
14  liability partnership; and DOES 1
    through 100, inclusive
15
                Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

---

**NOTICE OF REMOVAL**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT Defendant Susquehanna International Group, LLP, a Delaware limited liability partnership incorrectly named as Susquehanna International Group, LLC ("Defendant"), hereby removes to this Court the state court action described below.

1.      On July 27, 2012, an action was commenced in the Superior Court of the State of California in and for the County of Los Angeles, entitled Douglas L. Frey, an Individual, Plaintiff v. Susquehanna International Group, LLC (sic), a Delaware limited liability partnership, as Case Number GC049896. A true and correct copy of the complaint is attached hereto as **Exhibit "A."** On August 14, 2012, Plaintiff filed a Notice of Errata which contained the exhibits to the Complaint. A true and correct copy of the Notice of Errata is attached hereto as **Exhibit "B."**

2.      On August 17, 2012, Defendant's counsel signed a Notice and Acknowledgement of Receipt on behalf of Defendant. A true and correct copy of the Notice and Acknowledgment of Receipt is attached hereto as **Exhibit "C."**

3.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

4.      Plaintiff Douglas L. Frey ("Plaintiff") alleges that Defendant breached its oral contract with Plaintiff by failing to pay additional compensation in the amount of $390,000.00. (Complaint ¶¶10-26). Additionally, Plaintiff seeks punitive damages against Defendants, resulting in the amount in controversy far exceeding the $75,000 threshold. (Complaint, p. 7).

5.      Complete diversity of citizenship exists. Plaintiff is a citizen of California. Defendant is a citizen of Delaware and Florida. *Lincoln Property Co.*

2

1   *v. Roche*, 546 U.S. 81, 84 (2005) (citizenship of a partnership for diversity purposes

2   is determined by examining the citizenship of the partnership's partners).

3

4   DATED: September 12, 2012           Alan S. Petlak (SBN 179362)
                                        Ethan Chernin ( SBN 273906)

5                                      **BALLARD SPAHR LLP**

6

7                                      By:

8                                                 Alan S. Petlak

9

10                                  Attorneys for Susquehanna International Group, LLP (incorrectly named as
                                 Susquehanna International Group, LLC)

11   DMEAST #15592297 v5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF REMOVAL**

# EXHIBIT A

1   Michael T. O'Callaghan (Bar No. 166338)

    Mark J. Furuya (Bar No. 239002)

2   ARCHER NORRIS

    A Professional Law Corporation

3   333 South Grand Avenue, Suite 1700

    Los Angeles, California  90071-1540

4   Telephone:   213.437.4000

    Facsimile:   213.437.4011

5

    Attorneys for Plaintiff

6   DOUGLAS L. FREY

ORIGINAL FILED

JUL 27 2012

LOS ANGELES
SUPERIOR COURT

7

8               SUPERIOR COURT OF CALIFORNIA

9       COUNTY OF LOS ANGELES - NORTHEAST DISTRICT

10

11   DOUGLAS L. FREY,           Case No.   **G C 0 4 9 8 9 6**

12         Plaintiff,          **COMPLAINT FOR:**

13         v.              1.   **Breach of Oral Contract;**

                            2.   **Negligent Misrepresentation;**

14   SUSQUEHANNA INTERNATIONAL     3.   **Violation of the Fair Employment and**

    GROUP, LLC, a Delaware limited liability            **Housing Act ("FEHA") [Gov. Code §**

15   partnership; DOES 1 through 100,            **12900 et seq.] – Age Discrimination**

    inclusive,

16

17         Defendant.

18

19       COMES NOW Plaintiff, DOUGLAS L. FREY (hereinafter referred to as "Plaintiff") and

20   for causes of action against Defendants, SUSQUEHANNA INTERNATIONAL GROUP, L.L.C.

21   (hereinafter referred to as "SIG"), and Does 1 through 100, and each of them, alleges as follows:

22            **GENERAL ALLEGATIONS – PARTY IDENTIFICATION**

23       1.   Plaintiff is and was at all times herein mentioned a resident of the County of Los

24   Angeles, State of California.

25       2.   Plaintiff is informed and believes and thereon alleges that at all times herein

26   mentioned, Defendant, SIG is and was a Delaware limited liability partnership and qualified to do

27   business in the State of California.

28   ///

    CT055/1362136-1

                        COMPLAINT

3.    The true names and capacities of Defendants named herein as DOES 1 through 100, inclusive, whether individual, predecessor in interest, successor in interest, associate, business entity, government entity, or otherwise, are unknown to Plaintiff. Therefore, Plaintiff sues such defendants by fictitious names pursuant to <u>California Code of Civil Procedure</u> Section 474. Plaintiff will amend this Complaint to show such true names and capacities when they have been ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned Defendants. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

4.    Venue and jurisdiction in this matter is proper as this instant litigation involves the branch of SIG for which Plaintiff was working which is located in the City of Pasadena, County of Los Angeles, and State of California within the jurisdiction of the instant Court.

## FIRST CAUSE OF ACTION

### (BREACH OF ORAL CONTRACT)
**(Against all Defendants)**

5.    Plaintiff realleges, and fully incorporates by reference, each and every allegation contained in paragraphs 1 through 4, inclusive, as though set forth in full herein.

6.    Plaintiff is, and was at all times mentioned herein, a forty-eight (48) year old individual residing in La Canada, California.

7.    SIG is an investment and trading financial institution.

8.    Plaintiff was employed by the Pasadena branch of SIG on or about April 4, 2005, as a Research Sales Associate. He continued to work for SIG until he was terminated on January 4, 2012. Until 2011, Plaintiff entered into employment contracts with SIG which provided him a monthly salary and a year-end bonus ("Contracts"). *See* Exhibit "A". Pursuant to the Contracts,

CT055/1362136-1                                    2

COMPLAINT

1  Plaintiff earned a base salary of $250,000.00 and additional compensation within a range as

2  decided by the Contracts. The additional compensation which Plaintiff earned ranged from

3  $350,000.00 to $850,000.00. Throughout his time with SIG, Plaintiff generally received positive

4  reviews from SIG.

5      9.    In early 2011, Plaintiff participated in a conference call arranged by SIG via

6  telephone with Mr. Art Oswald, head of Research Sales, and Mr. Matthew Koob, who ran the

7  West Coast division of the research and sales department, at SIG. During this conference call,

8  SIG and Plaintiff entered into an oral contract ("Oral Contract") for Plaintiff's employment with

9  SIG.   The terms of the Oral Contract were as follows:

10          a.    In exchange for Plaintiff's continuing employment with SIG as a Research

11                Sales Associate, SIG represented to him that in addition to his base salary of

12                $250,000, he would also be compensated at a payout rate more appropriate

13                for a sales person of his stature and level based upon approximately 10% of

14                cash and comp, including ETF;

15          b.    SIG also represented that he would earn an additional 2-3% of the derivative

16                options trading business that was performed throughout 2011; and

17          c.    Plaintiff would receive the base salary and be paid additional compensation

18                for his work based on a percentage of the revenues generated on behalf of

19                the firm, in the manner set forth above in this Oral Contract.

20  SIG also represented to Plaintiff that there would not be a written contract for 2011. In reliance

21  upon these affirmative representations by SIG, Plaintiff agreed to continue his employment with

22  SIG after the expiration of the March 26, 2010 contract pursuant to the terms of the Oral Contract.

23      10.   By the end of 2011, Plaintiff increased revenues by approximately 35% from their

24  previous levels in 2010. Additionally, he brought in revenues of over $3,000,000 for cash and

25  ETF, and approximately $3,000,000 of derivative trades. In accordance with his Oral Contract

26  with SIG, Plaintiff was entitled to an additional amount of $390,000.00 above his base salary.

27      11.   Plaintiff substantially performed all of the significant things that the Oral Contract

28  required him to do throughout 2011.

CT055/1362136-1                           3

12.    When the time came for SIG to pay Plaintiff his additional compensation, SIG breached the Oral Contract by failing to pay his additional compensation, and instead terminated Plaintiff.

13.    As a proximate result of SIG'S breach, Plaintiff was harmed in the form of loss of income and future business, in an amount to be established at the time of trial.

## SECOND CAUSE OF ACTION

### (NEGLIGENT MISREPRESENTATION)
### (Against all Defendants)

14.    Plaintiff hereby incorporates by reference all of the allegations in Paragraphs 1 through 13 above as though fully set forth herein.

15.    Plaintiff is, and was at all times mentioned herein, a forty-eight (48) year old individual residing in La Canada, California.

16.    SIG is an investment and trading financial institution.

17.    Plaintiff was employed by the Pasadena branch of SIG on or about April 4, 2005, as a Research Sales Associate. He continued to work for SIG until he was terminated on January 4, 2012. Until 2011, Plaintiff entered into employment contracts with SIG which provided him a monthly salary and a year-end bonus ("Contracts"). *See* Exhibit "A". Pursuant to the Contracts, Plaintiff earned a base yearly salary of $250,000.00 and additional compensation within a range as decided by the Contracts. The additional compensation which Plaintiff earned ranged from $350,000.00 to $850,000.00. Throughout his time with SIG, Plaintiff generally received positive reviews from SIG.

18.    In early 2011, Plaintiff participated in a conference call arranged by SIG via telephone with Mr. Art Oswald, head of Research Sales, and Mr. Matthew Koob, who ran the West Coast division of the research and sales department, at SIG. During this conference call, SIG and Plaintiff discussed the terms of the Oral Contract and made the following material and important representations as fact to Plaintiff's employment terms with SIG.

a.    In exchange for Plaintiff's continuing employment with SIG as a Research

CT055/1362136-1                                          4

COMPLAINT

1                Sales Associate, SIG represented to him that in addition to his base salary of

2                $250,000, he would also be compensated at a payout rate more appropriate

3                for a sales person of his stature and level based upon approximately 10% of

4                cash and comp, including ETF;

5        b.      SIG also represented that he would earn an additional 2-3% of the derivative

6                options trading business that was performed throughout 2011;  and

7        c.      Plaintiff would receive the base salary and be paid additional compensation

8                for his work based on a percentage of the revenues generated on behalf of

9                the firm, in the manner set forth above in this Oral Contract.

10 SIG further made material representations to Plaintiff that he would not need to sign a written

11 contract for this year.

12     19.    After performing substantially all of the terms under the Oral Contract, Plaintiff

13 found out that the representations SIG made regarding Plaintiff's bonus was not in fact true.

14     20.    However, at the time SIG made these representations to Plaintiff, SIG had no

15 reasonable grounds for believing that it would in fact perform all of the terms under the Oral

16 Contract as it had previously been planning on terminating Plaintiff prior to paying him his

17 bonus.

18     21.    Based on the previous employment agreements that Plaintiff had with SIG, and the

19 fact that the terms of this Oral Contract were similar to the prior employment agreements,

20 Plaintiff reasonably relied on SIG'S representation that SIG would perform its obligations under

21 the Oral Contract and furthermore, that Plaintiff would not need to sign a written agreement to

22 memorialize the Oral Contract.

23     22.    By the end of 2011, Plaintiff increased revenues by approximately 35% from their

24 previous levels in 2010. Additionally, he brought in revenues of over $3,000,000 for cash and

25 ETF, and approximately $3,000,000 of derivative trades.  In accordance with his Oral Contract

26 with SIG, Plaintiff was entitled to an additional amount of $390,000.00 above his base salary.

27     23.    When the time came for SIG to pay Plaintiff his bonus, SIG failed to pay his

28 additional compensation, and instead terminated Plaintiff.

CT055/1362136-1

5

24.    Plaintiff's reliance on SIG'S representations was the substantial factor in causing Plaintiff's harm.

25.    As a proximate result of SIG'S breach, Plaintiff was harmed in the form of loss of income and future business, in an amount to be established at the time of trial.

### THIRD CAUSE OF ACTION

**(VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") [GOV. CODE § 12900 ET SEQ.] – AGE DISCRIMINATION)**
**(Against all Defendants)**

26.    Plaintiff hereby incorporates by reference all of the allegations in Paragraphs 1 through 25 above as though fully set forth herein.

27.    Plaintiff is, and was at all times mentioned herein, a forty-eight (48) year old individual residing in La Canada, California.

28.    SIG is an investment and trading financial institution.

29.    Plaintiff was employed by the Pasadena branch of SIG on or about April 4, 2005, as a Research Sales Associate. He continued to work for SIG until he was terminated on January 4, 2012. Throughout his time with SIG, Plaintiff generally received positive reviews from SIG. Additionally, Plaintiff's superiors undermined his authority by communicating and interacting primarily with younger employees instead of Plaintiff. This conduct by Defendants was intended to ostracize and force out Plaintiff due to his age. Furthermore, Plaintiff also noticed changed and negative attitudes by Plaintiff's superiors as a result of his age.

30.    In early 2011, Plaintiff entered into an Oral Contract with SIG to continue his employment with SIG.

31.    When the time came for SIG to pay Plaintiff his additional compensation pursuant to his Oral Contract, he was terminated.

32.    Upon information and belief, Plaintiff was replaced with a younger sales associate. Upon further information and belief, Plaintiff thereon alleges that SIG had long planned the ouster of Plaintiff due to his increasing age.

///

CT055/1362136-1

6

COMPLAINT

1    33.    On June 4, 2012, Plaintiff filed a "Complaint of Discrimination Under the

2    Provisions of the California Fair Employment and Housing Act" (hereinafter "FEHA Complaint")

3    requesting a "right to sue" notice.  On June 4, 2012, the Department of Fair Employment and

4    Housing issued a "Notice of Case Closure" (hereinafter "Notice"), constituting Plaintiff's "right

5    to sue" notice.  A true and correct copy of the FEHA Complaint and Notice are attached hereto as

6    Exhibit "B".

7    34.    As a direct and proximate result of SIG'S age discrimination, Plaintiff has suffered

8    damages, including loss of his bonus, in an amount to be established according to proof at time of

9    trial.

10    **PRAYERS FOR RELIEF**

11    WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them, as

12    follows:

13    **AS TO THE FIRST, SECOND, AND THIRD CAUSES OF ACTION:**

14    1.    General damages;

15    2.    Compensatory damages, in an amount according to proof;

16    3.    Reasonable attorneys fees and costs, in an amount according to proof;

17    4.    Punitive damages; and

18    5.    Such other and further relief as the Court deems just and proper.

19

20    Dated: July 27, 2012                    ARCHER NORRIS

21

22                                        Michael T. O'Callaghan

23                                        Mark J. Furuya
                                         Attorneys for Plaintiff
24                                       DOUGLAS L. FREY

25

26

27

28

CT055/1362136-1                          7

COMPLAINT

# EXHIBIT B

1  Michael T. O'Callaghan (Bar No. 166338)
   Mark J. Furuya (Bar No. 239002)
2  ARCHER NORRIS
   A Professional Law Corporation
3  333 South Grand Avenue, Suite 1700
   Los Angeles, California 90071-1540
4  Telephone:  213.437.4000
   Facsimile:   213.437.4011
5
   Attorneys for Plaintiff
6  DOUGLAS L. FREY

7

8                    SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF LOS ANGELES - NORTHEAST DISTRICT

10                        PASADENA COURTHOUSE

11

12  DOUGLAS L. FREY,                    Case No.  GC049896

13              Plaintiff,
                                        NOTICE OF ERRATA
14       v.

15  SUSQUEHANNA INTERNATIONAL
    GROUP, LLC, a Delaware limited liability
16  partnership; DOES 1 through 100, inclusive,

17              Defendant.

18

19       **PLEASE TAKE NOTICE** of the following errata found on Plaintiff DOUGLAS L.

20  FREY'S ("FREY") Complaint:

21       Exhibit "A" and "B" to the Complaint of FREY was inadvertently omitted.  True and

22  correct copies of both exhibits are attached hereto respectively as Exhibits "A" and "B".

23

24  Dated: August 14, 2012              ARCHER NORRIS

25

26                                      Michael T. O'Callaghan
                                        Mark J. Furuya
27                                      Attorneys for Plaintiff
                                        DOUGLAS L. FREY
28

CT055/1411753-1

                              NOTICE OF ERRATA

# EXHIBIT "A"

**SIG**
SUSQUEHANNA

401 City Avenue
Bala Cynwyd, PA 19004
www.sig.com

## EMPLOYMENT AGREEMENT BETWEEN

### SUSQUEHANNA INTERNATIONAL GROUP, LLP

#### and

#### DOUGLAS L. FREY

This Agreement is entered into on this _26_ day of March, 2010 by and between Susquehanna International Group, LLP, a Delaware limited liability partnership  (together with its related and/or affiliated entities, "SIG"), and Douglas L. Frey ("Employee" or "you"), an individual residing at 4255 Encinas Drive, La Canada, California  91011. Certain capitalized terms have the meanings set forth on Exhibit A attached hereto and made a part hereof.

SIG and Employee, each intending to be legally bound hereby, agree as follows:

1.  <u>Employment and Covenant during the Term.</u>  SIG agrees to employ you, and you agree to be employed by SIG, on the terms and conditions set forth in this Agreement.  You agree to remain in SIG's employ and SIG agrees to maintain your employment from January 1, 2010 (the "<u>Effective Date</u>") until December 31, 2010 (the "<u>Term</u>").  While employed by SIG, you will devote your entire working time, energy, skill and best efforts to further the business interests of SIG.  You acknowledge and recognize (i) the valuable consideration received by you hereunder, (ii) the highly competitive nature of SIG's business, and (iii) SIG's legitimate business interests in protecting its goodwill, confidential information and trade secrets, all of which you will have access to and benefit from while employed by SIG.  Accordingly, you agree that during the Term (except when acting on behalf of SIG), you shall not, directly or indirectly, engage in any activity involving or related to or supporting the Brokerage Business.

2.  <u>Representations and Warranties.</u>  You represent and warrant that you are not subject to any restrictions that would prevent you from being employed by SIG, providing the services contemplated herein, soliciting or hiring any persons or soliciting any clients.  You further represent and warrant that you are not the subject of any current, pending or threatened complaint, proceeding or investigation by any judicial, governmental, administrative or self-regulatory body or by any of your former employers.  You will defend and hold SIG and its officers, directors, employees and agents harmless from any and all claims, costs and expenses suffered or incurred by SIG, including attorneys' fees, as a result of, or in connection with, a breach of any representation contained in this paragraph.

3.  <u>Compensation.</u>  You shall receive compensation while employed by, and providing services to, SIG under this Agreement as follows:

(a)    You shall receive a salary at a gross monthly rate of $20,833.33 commencing on the Effective Date.

(b)    You shall be eligible to receive a discretionary bonus for calendar year ending December 31, 2010.  SIG expects that this discretionary bonus will be determined at an annual rate between $200,000.00 and $600,000.00 with a target discretionary bonus determined at an annual rate of $400,000.00; provided that the discretionary bonus for which you shall be eligible in respect of calendar year 2010 shall not be less than $200,000.00 (the "Minimum Amount").  You understand that the bonus amount that you are eligible to receive pursuant to this Paragraph 3(b) (in excess of the Minimum Amount) is entirely within the discretion of SIG and SIG retains the absolute, unfettered discretion to grant no bonus (in excess of the Minimum Amount) whatsoever.  For the avoidance of doubt, there will be no Minimum Amount for any calendar year other than calendar year 2010.

(c)    You also shall be eligible to receive a discretionary bonus for each calendar year after 2010 that you are employed hereunder.  You understand that the bonus amounts that you are eligible to receive pursuant to this Paragraph 3(c) are entirely within the discretion of SIG and SIG retains the absolute, unfettered discretion to grant no bonus whatsoever.

March 5, 2010

(d)     All compensation (including bonuses and the Minimum Amount) shall be paid in accordance with SIG's normal payroll policies as in effect from time to time net of applicable withholdings.   No salary or bonus (including the Minimum Amount) will be paid under Paragraphs 3(a) and 3(b) in the event you resign without Good Reason or are terminated for Cause prior to the award and payment of such salary or bonus by SIG.  No bonuses will be paid under Paragraph 3(c) in the event your employment terminates for any reason prior to the award and payment of such bonus by SIG.  Notwithstanding the foregoing, if you remain employed by SIG through December 31, 2010, and are not terminated for Cause and do not breach any of your obligations to SIG prior to the date SIG generally pays its employees bonuses for calendar year 2010, you shall be eligible to be awarded and paid your bonus pursuant to Paragraph 3(b) for calendar year 2010, regardless of whether you are employed by SIG at the time such bonus is awarded and paid.  The bonuses will not be earned or payable until the Management Committee of SIG, in its complete discretion, determines that the performance of SIG for such year and through the payment date is sufficient to declare and pay such bonus.  You acknowledge and assume the risk that an event could occur before the date SIG typically would declare and schedule to pay bonuses that prevents SIG from declaring and paying those bonuses.  If this were to happen, you shall remain eligible to receive the bonus pending a determination by SIG's Management Committee that SIG's performance is sufficient to declare and pay such bonus, regardless of whether you are then employed by SIG.  Any such determination, declaration and payment shall be prior to any award and payment of employee bonuses with respect to any subsequent year.  Any determination by SIG's Management Committee not to award bonuses shall be made consistently for all employees with bonuses that contain conditions similar to those contained in this Agreement.  The bonus (including the Minimum Amount) that may be awarded in respect of calendar year 2010 shall be pro rated if you are on a leave of absence from SIG (because of disability or otherwise) during such calendar year.

(e)     You agree and acknowledge that SIG may set off any amounts that you may now or hereafter owe to SIG against any amounts that may be awarded by SIG to you under this Agreement or otherwise.

4.     <u>Termination</u>.  During the Term, SIG may terminate your employment for Cause by providing you notice of the effective date of such termination (which effective date may be immediately).  During the Term, you may resign your employment for Good Reason.  In the event you resign without Good Reason or are terminated for Cause, neither SIG nor you shall have further obligations or liabilities hereunder, except: (a) SIG shall pay you, in accordance with SIG's normal payroll practices, all accrued but unpaid salary through such termination date; and (b) after the termination date, the provisions referred to in Paragraph 9 shall remain in full force and effect.  In the event that on or before December 31, 2010, SIG terminates you without Cause or you resign with Good Reason, neither SIG nor you shall have further obligations or liabilities hereunder, except that (i) after the termination date the provisions of the last sentence of Paragraph 2, and Paragraphs 3(d), 3(e) and 5(b) through 15 shall remain in full force and effect, (ii) SIG shall pay you, in accordance with SIG's normal payroll practices, your salary pursuant to Paragraph 3(a) until the earlier of the end of the Term and the occurrence of an Early Termination Event and (iii) so long as an Early Termination Event has not occurred prior to the end of the Term, you shall remain eligible to receive the amount of any unpaid bonus (including the Minimum Amount) pursuant to Paragraph 3(b).  Any payments under clause (iii) above shall be made on the date that SIG generally pays bonuses to its employees for the applicable calendar year.  An Early Termination Event shall occur if you, directly or indirectly, in any manner or capacity, engage in any activity (including the Brokerage Business) reasonably similar to activities that you performed for SIG.  You shall have an affirmative obligation to inform SIG in advance of the occurrence of an Early Termination Event prior to the end of the Term.  For the avoidance of doubt, in the event that you resign your employment with SIG on or after January 1, 2011, you shall nevertheless be eligible to receive your unpaid bonus (including the Minimum Amount) pursuant to Paragraph 3(b).  Notwithstanding anything herein to the contrary, but subject to the immediately preceding sentence,

after the Term, either you or SIG may terminate your employment for any or no reason at all by providing the other notice of the effective date of such termination (which effective date may be immediately), in which event neither SIG nor you shall have further obligations or liabilities hereunder, except that after the termination date, the provisions referred to in Paragraph 9 shall remain in full force and effect.  In this regard, you shall not be eligible for a discretionary bonus for any calendar year after the Term if you are not employed by SIG at the time such bonus is awarded and paid.

     5.    <u>Acknowledgments</u>.

        (a)    You understand that the provisions of Paragraph 1 hereof may limit your ability to earn a livelihood in a business similar to the business of SIG, but nevertheless believe that you shall receive remuneration and other benefits hereunder, including training and access to confidential information, sufficient to justify the restrictions contained in such provisions.  Further, given your education, skills and abilities, you do not believe these restrictions would prevent you from earning a living.  You also acknowledge that the business of SIG is international in scope and that the restrictions set forth in this Agreement are accordingly reasonable in geographic breadth even though not limited to any particular area or market.  You recognize that SIG would not employ you if you were not willing to agree to Paragraph 1.

        (b)    You further agree to refrain at all times after the date hereof from, directly or indirectly, making any oral or written statements of a disparaging, derogatory, defamatory, false or otherwise misrepresentative nature to any person or entity about or relating to SIG (including its related and affiliated companies) and each of their past, present and future directors, partners, officers, employees, attorneys, owners or agents.  Nothing in this Agreement is intended to or shall be interpreted to restrict your right and/or obligation to: (i) discuss working conditions with current SIG employees, (ii) testify truthfully in any forum and/or (iii) contact, cooperate with or provide information to any government agency or commission.

     6.    <u>Recognition</u>.  You further acknowledge that you shall not have the right to inspect or review or audit the books or records of SIG and that the determination as to whether you or another employee of SIG shall provide or continue to provide corporate research sales coverage to any brokerage account shall at all times be SIG's sole and exclusive right and SIG may from time to time in its sole discretion revise any such determination.

     7.    <u>Time</u>.  The length of time described in Paragraph 1 (at least through December 31, 2010) and in the Non-Interference Agreement (as referenced below) (nine months and five years) shall not run during any period that you are in violation of any of the terms of Paragraph 1 or the Non-Interference Agreement and shall be extended for the period of any such violation.

     8.    <u>Remedies</u>.  You acknowledge that SIG would be irreparably harmed if you were to breach any of the terms of this Agreement and, therefore, agree that SIG shall be entitled to injunctive relief (without the posting of any bond) to prevent any breaches or threatened breaches of this Agreement and to specific performance of its terms in addition to any other legal or equitable remedies.  Nothing contained herein shall be construed as prohibiting SIG from pursuing any other remedies at law or in equity which it may have.

     9.    <u>Survival</u>.  Your obligations under the last sentence of Paragraph 2 and Paragraphs 3(d), 3(e) and 5 through 15, and SIG's right to enforce such obligations, shall survive the termination for any reason of your employment with SIG.  In addition, in the event that prior to December 31, 2010, you resign without Good Reason or are terminated for Cause, your obligations under Paragraph 1, and SIG's right to enforce such obligations, shall survive such termination of your employment with SIG.

     10.    <u>Severability; Modification by Court</u>.  If any provision of this Agreement is determined by a court of

        March 5, 2010

competent jurisdiction (i) to be invalid or unenforceable for any reason, such determination shall not affect the remaining provisions of this Agreement which shall continue to be given full force and effect or (ii) to be unenforceable because of the duration thereof, the geographical area included therein or the scope of the prohibited work or activity, the parties hereby expressly agree that the court making such determination shall have the power to reduce the duration and/or restrict the geographic area of such provision and/or reduce the scope of prohibited work or activity and/or delete such specific words or phrases which the court shall deem necessary to permit enforcement of such provision in restricted form.    Should any court of competent jurisdiction find any provision of any comparable agreement with any other current or former SIG employee invalid or unenforceable, or enforceable only in restricted form, then any such finding shall apply only to the current or former employee(s) involved as the party(ies) in that court proceeding, and shall not serve to alter or amend this Agreement or any other agreement between SIG and you.

      11.    <u>Successors</u>.  This Agreement shall not be assigned by you or by SIG except that SIG may assign this Agreement in the event of a change in control or sale of SIG in which case this Agreement shall inure to the benefit of SIG's successors and assigns.

      12.    <u>Governing Law and Forum</u>.  This Agreement and questions relating to its validity, interpretation, performance and enforcement shall be governed and construed according to the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws principles.  You and SIG submit to the exclusive jurisdiction of the state courts located in Montgomery County, Pennsylvania and to the Federal courts located in Philadelphia, Pennsylvania as to all actions and proceedings relating in any way to this Agreement, your employment or its termination that are not determined by arbitration pursuant to the Dispute Resolution Agreement referred to below. You and SIG further agree that such courts shall have personal jurisdiction over each of them and are a proper venue and a convenient forum with respect to all such actions or proceedings.

      13.    <u>Mutual Release</u>.  You hereby agree to release and forever discharge SIG (including related and affiliated companies of SIG and each of their past, present and future officers, directors, partners, attorneys, employees, owners and agents in such capacities), and SIG hereby agrees to release and forever discharge you, from any and all actions, complaints, charges, causes of action, lawsuits, rights  or claims of any kind (collectively, "<u>Claims</u>"), known or unknown, that you (and your heirs, executors, administrators, agents, or assigns) or SIG ever had, now have or hereafter may have against each other arising out of any matter, occurrence or event existing or occurring prior to the Effective Date relating to or arising out of your employment with SIG and/or any of its related and/or affiliated companies, whether or not covered by a prior employment agreement with SIG, including, without limitation: (i) any Claims for unpaid or withheld wages, severance, benefits, bonuses, commissions and/or other compensation of any kind; (ii) any Claims for attorneys' fees, costs or expenses; (iii) **any Claims of discrimination and/or harassment based on age, sex, race, religion, color, creed, disability, handicap, citizenship, national origin, ancestry, sexually hostile work environment, sexual preference or orientation, or any other factor prohibited by Federal, State or Local law, including common law and statutes (such as the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq., Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act and the Pennsylvania Human Relations Act)**; (iv) any Claims for retaliation under any whistleblower law or otherwise; and/or (v) any other statutory or common law Claims, including, but not limited to, breach of contract, libel, slander, defamation, promissory estoppel, equitable estoppel, now existing or hereinafter recognized; provided, however, that the mutual releases set forth in this Paragraph 13 shall not apply to any matter, occurrence or event that would constitute fraud, misappropriation or willful misconduct on the part of you. You further intentionally and knowingly waive all rights or benefits that you may now or in the future have under the terms of

Section 1542 of the California Civil Code, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his/her favor at the time of executing the release, which if known by him/her must have materially affected his/her settlement with the debtor.

14.    Waiver of Breach; Selective Enforcement.    The waiver by SIG of your breach of any provisions or covenants of this Agreement shall not operate or be construed as a waiver of any subsequent breach by you of the same or a different provision.   Selective enforcement of this type of Agreement against some persons and not others shall in no way be construed as affecting the enforceability of this Agreement with you, or be construed in any way against SIG.

15.    Entire Agreement.    This Agreement, together with the Confidential Information Agreement, Non-Interference Agreement and Dispute Resolution Agreement, each of which were executed by the you as a condition of your employment, the terms of which are incorporated by reference herein and continue in full force and effect, contain the entire understanding among the parties with respect to the subject matter hereof, and supersede all prior and contemporaneous agreements and understandings, inducements of conditions, express or implied, oral or written except as herein contained. This Agreement may not be modified or amended, other than by an agreement in writing signed by the parties.

Todd Silverberg, Chief Operating Officer
For Susquehanna International Group, LLP

DATE: _____

Agreed and Accepted:

DOUGLAS E. FREY

DATE: _____3/26/2010_____

March 5, 2010